AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Southern District of Ohio

**FILED**
**RICHARD W. NAGEL**
**CLERK OF COURT**

2/17/21

**U.S. DISTRICT COURT**
**SOUTHERN DIST. OHIO**
**WEST. DIV. DAYTON**

| In the Matter of the Search of | | |
|---|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) ) ) ) | Case No. |
| THE RESIDENCE LOCATED AT: 319 E. MAPLEWOOD AVE., DAYTON, OHIO | | 3:21-mj-60 Kimberly Jolson |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A

located in the _____ Southern _____ District of _____ Ohio _____ , there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

❏ evidence of a crime;

❏ contraband, fruits of crime, or other items illegally possessed;

❏ property designed for use, intended for use, or used in committing a crime;

❏ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC §§ 841(a)(1) and 846 | Possession with the intent to distribute and to distribute a controlled substance and conspiracy to commit the same. |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT

❏ Continued on the attached sheet.

❏ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____ )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*David M Ashley*
_____
*Applicant's signature*

SA David Ashley
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _____ *(specify* _____

Date: February 17, 2021

Kimberly A. Jolson
United States Magistrate Judge

City and state: Columbus, Ohio

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF iPhone with a White Back and Red Phone Case with Cricket Sim Card 89011503277364943214 CURRENTLY LOCATED AT 3821 Colonel Glenn Hwy, Beavercreek, Ohio 45324 | 3:21-mj-60<br><br>Case No. _____ |

**AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41**
**FOR A WARRANT TO SEARCH AND SEIZE**

I, David Ashley, (hereinafter referred to as Affiant), being first duly sworn, hereby depose and state as follows:

**INTRODUCTION**

1.     Your Affiant is an officer or employee of the United States Department of Justice (DOJ), Drug Enforcement Administration (DEA), within the meaning of Section 878(a) of Title 21, United States Code, that is an officer who is empowered by law to conduct investigations, make arrests, and seize property for violations of Title 18, United States Code and Title 21, United States Code.

2.     Affiant is a Special Agent (SA) for the DEA and has been so employed since August 2009. During Affiant's employment with the DEA, Affiant has been assigned to both the Chicago Field Division (CFD) in Chicago, Illinois and the Dayton Resident Office (DRO) in Dayton, Ohio.

3.     Your Affiant has been involved in the investigation of various individuals and organizations involved in the manufacturing, distribution, and use of controlled substances. Your Affiant has conducted surveillance operations and has become familiar with the methods used by individuals engaged in the manufacturing, trafficking, and use of controlled substances. Your

1

Affiant received specialized training at the DEA Training Academy in Quantico, Virginia in regards to the identification of narcotic substances and the operation of drug trafficking organizations.

## PURPOSE OF AFFIDAVIT

4.     Affiant makes this affidavit in support of applications for search warrants at the following residence – namely:  319 Maplewood Avenue, Dayton, Ohio, including any outbuildings, garages, or curtilage at this location (hereinafter "**Target Residence**").

5.     As detailed more fully below, Affiant submits that there is probable cause to believe that evidence of a crime as well as contraband, fruits of a crime or other items illegally possessed in relation to the following offenses exist and can be found inside the Target Residence – namely:

a.     Possession with Intent to Distribute Controlled Substances, in violation of Title 21, United States Code, § 841; and

b.     Conspiracy to Possess with Intent to Distribute Controlled Substances, in violation of Title 21, United States Code, § 846.

6.     A list of specific items to be seized from the premises described above is attached hereto as Attachment B, and Attachment B is incorporated herein by reference.  Based on my training and experience as well as the facts contained in the affidavit, Affiant believes that there is probable cause to believe that the items listed in Attachment B will be found at the premises described above.  Affiant has not included every detail of the investigation, but only information necessary to establish probable cause that evidence associated with above-described drug trafficking offenses is located at Target Residence.

7.      Affiant is participating in an investigation conducted by agents of the DEA and other agencies concerning the methamphetamine trafficking activities of individuals in the Dayton, Ohio area and elsewhere. The information contained in this affidavit comes from a variety of sources that Affiant believes to be reliable, including:

      A.      Physical surveillance conducted by federal and local law enforcement agents, the details of which have been reported to me either directly or indirectly;

      B.      Information developed from a defendant witness

      C.      Public records;

      D.      Trash Surveys;

      E.      Law enforcement databases

This affidavit does not contain all facts known to Affiant, only those necessary to establish probable cause in support of the request of a search warrant for the Target Residence.

## PROBABLE CAUSE

*Investigation Concerning Crawley and Williams*

8.      Affiant has been involved in an investigation into the drug trafficking activities of Brandon WILLIAMS ("WILLIAMS") and Robert CRAWLEY ("CRAWLEY").  Based on the information below, investigators believe that WILLIAMS and CRAWLEY distribute methamphetamine and other controlled substances in and around Dayton, Ohio.

9.      Affiant has reviewed the criminal histories of WILLIAMS, and he has prior links to the drug trade.  For instance, WILLIAMS has prior state convictions for, among other things: Falsification and Aggravated Trafficking of Drugs (2016); Possession of Drugs (2017); and Possession of Marijuana (2020).  CRAWLEY has prior contact with law enforcement, including a 2014 arrest by Fairborn, Ohio police for Criminal Trespass and Obstruction of Official Business.

10.     Based on information from law enforcement from Warren County, Ohio, Affiant learned that, during July 2020, police had contact with CRAWLEY at a Franklin, Ohio hotel room where officers discovered methamphetamine.  Specifically, while arresting another person on an active warrant in the hotel room, officers also encountered CRAWLEY.   While in the room, officers observed in plain view on a microwave suspected methamphetamine.  During the arrest of another person, CRAWLEY asked if he could retrieve shoes and socks from his duffel bag. Law enforcement officers stated that he would have to dump the contents of the bag on the floor due to officer safety considerations. At that time, CRAWLEY emptied the contents of the bag which resulted in a clear container of crystal-like substance being seen in the bag by law enforcement. This suspected controlled substance was seized and a subsequent lab analysis confirmed that the substance, in fact, was methamphetamine.  Local police ultimately arrested CRAWLEY for Drug Abuse (Bulk) and the matter remains pending in the Warren County, Ohio Court of Common Pleas.

11.     Based on information from local police, affiant learned that, in October 2020, WILLIAMS was riding a motorcycle in Xenia, Ohio when a marked Xenia Police Department (XPD) unit attempted to stop him for a traffic violation.  The XPD officer was familiar with WILLIAMS and knew that WILILIAMS' license was suspended.  WILLIAMS attempted to flee, but ultimately wrecked his motorcycle during the encounter.  During the ensuing encounter, XPD found WILLIAMS in possession of a backpack containing approximately 300 grams of suspected methamphetamine; subsequent lab results confirmed the substance as methamphetamine.  WILLIAMS was arrested on drug charges and the case is currently pending in Greene County, Ohio Court of Common Pleas.  Additionally, affiant

learned from an investigator at XPD that local law enforcement considers CRAWLEY and
WILLIAMS as close associates who traffic drugs together.

12.    On December 10, 2020, your Affiant responded to 2829 Mall Park Dr.,
Miamisburg, Ohio at the request of Miamisburg Police Department (MPD).  Based on
information from MPD, your Affiant learned the following information:

a.    MPD performed a traffic stop of a rental car with Kentucky license
plates after the driver made an improper lane change and crossed the yellow line
of traffic.  During the stop, the car's driver (later identified as WILLIAMS) could
not produce either a valid driver's license or a rental agreement for the car.  Upon
gaining WILLIAMS' identifiers and running that information in a law
enforcement database, MPD learned that he had an active arrest warrant from
Greene County, Ohio.  MPD also received information that WILLIAMS was a
target of a narcotics investigation in Xenia, Ohio as detailed above.  WILLIAMS
was removed from the vehicle and placed in a marked police unit pending a field
interview by your Affiant and other DEA personnel.

b.    The Miamisburg Police Department Officer then returned to the
vehicle and spoke with CRAWLEY, who was seated as the front passenger.
CRAWLEY could not produce a valid identification.  While speaking with
CRAWLEY, the MPD officer noticed an odor of marijuana coming from the
vehicle.  The officer asked CRAWLEY to exit the vehicle.  When CRAWLEY
did so, the officer saw a glass tube consistent with a bong in plain view in the
pocket of the passenger door.  The vehicle was going to be towed and an
inventory search was conducted. The search of the vehicle revealed another

5

baggie of suspect methamphetamine in the center console, four marijuana edible packages were found in the center console (retained by Miamisburg Police Department), three more edible packages were recovered from inside a backpack, located in the rear seat (retained by Miamisburg Police Department), and another edible package recovered from within the dash pocket (retained by Miamisburg Police Department). In the front right passenger door pocket was a bong and Narcan. Further discovered was a motorcycle intercom box with large bags of a crystalline substance. A search of the backpack also revealed a small baggie of multicolored pills which were suspected pressed methamphetamine. A field test was conducted of these exhibits which tested positive for methamphetamine. Also in the backpack were several charge card style cards which had Brandon WILLIAMS' name on them and ziplock baggies with residue.

      c.     A Miamisburg Police Department Officer noticed that a man, who identified himself as the father of Brandon WILLIAMS, had walked to the scene. He stated that he was staying at the Extended Stay in room 216. The male was identified as Billy Joe RUSSELL. RUSSELL stated that WILLIAMS had taken the car when he had fallen asleep and did not have permission to use the vehicle. RUSSELL stated that the narcotics found in the car were not his. RUSSELL has a prior criminal history of domestic violence. RUSSELL then left the scene via foot. Affiant later learned that RUSSELL had been identified by a confidential source to a non-DEA law enforcement agency as an individual that had at some time sold narcotics to that confidential source.

6

d. Affiant obtained personal identification from WILLIAMS. WILLIAMS stated that he wanted to cut straight to the point wherein WILLIAMS admitted to being a drug dealer and would be willing to cooperate with law enforcement for consideration. WILLIAMS stated he didn't want to go to jail. This statement was made spontaneously by WILLIAMS while Affiant was collecting personal identifying information. Affiant, as witnessed by PO Sampson and SA Lauren Wagner, read Brandon WILLIAMS his Miranda Warnings via DEA Form 13. This was captured on police car video. The following is a summary of what was captured on police car video. WILLIAMS stated that the narcotics did not belong to him and it belonged to Rob CRAWLEY. WILLIAMS stated that he was willing to work with the DEA for consideration of reduction of sentencing of charges for CRAWLEY. WILLIAMS stated he has Kentucky sources and that he has Cartel connections in Dayton. WILLIAMS also stated that he can get hold of "boy" and "fetty". WILLIAMS stated that he can get 20-30 pounds of methamphetamine for $5,500 a pound and 5-10 pounds of fetty for an unknown price.

e. At that time, interviews were concluded. WILLIAMS was transferred to Xenia Police Department for the outstanding warrant. PO Sampson transported the evidence to the Miamisburg Police Department for processing.

*Investigation Concerning 319 Maplewood Avenue (Target Residence)*

13. Investigators reviewed a Dayton Police Department report concerning an overdose incident involving an individual identified herein by the initials J.W. According to the

report, an ambulance was called to the Target Residence for a reported overdose of J.W. at that location. A witness on the scene indicated that J.W. had taken "ice."

14.      CRAWLEY has previously provided the Target Residence as his residence to law enforcement in past encounters.

15.      In January 2021, Affiant and other investigators conducted surveillance at the Target Residence. Investigators observed CRAWLEY come and go from the residence, multiple times, as well as a high volume of traffic at the residence. To protect this investigation, vehicles were not stopped, when observed coming to and from the residence but investigators observed several of these vehicles only stopped for a short time and were found to have out-of-state license plates. Through training and experience, your Affiant understands that the traffic observed at the Target Residence is consistent with that of drug sales.

16.      On January 11, 2021, Affiant and other law enforcement officers conducted a trash pull at the Target Residence. Pursuant to this trash pull, law enforcement recovered two spoons with a white powdery substance which field tested positive for cocaine. On January 19, 2021, law enforcement conducted a secondary trash pull at the Target Residence. Officers recovered several clear plastic baggies with a powdery substance which field tested positive for methamphetamine. Also located in the trash, was a white piece of paper with the name Robert CRAWLEY written on it.

17.      On February 1, 2021, SA David Ashley, SA Austin Roseberry and TFO Sean Copley conducted a trash pull at 319 E. Maplewood Ave, Dayton, Ohio. During the search of the trash, the following was found: several sandwich baggie ends with a powdery substance which was field test and found positive for the presence of methamphetamine; and a white sheet of paper with the name Robert CRAWLEY written on it.

18. Based on the foregoing, Affiant believes that WILLIAMS and CRAWLEY are trafficking methamphetamine in southern Ohio. Affiant further concludes that, at a minimum, CRAWLEY is using the Target Residence as a base of operations for this activity. During 2021, law enforcement has observed foot traffic at this location consistent with the home being used a location from which individuals store or sell drugs. Supporting that conclusion, police records confirm an overdose occurring at that residence; based on my training and experience, Affiant knows that drug traffickers will allow customers to sample products or use illegal controlled substances at their stash houses, which may lead to the customer overdosing at that location. Additionally, multiple trash pulls from the residence have recovered indicia of drug activity, including baggies (commonly used to package and store drugs for redistribution) that field tested positive for the presence of controlled substances.

19. Based on my training and experience, Affiant knows it is common practice for drug traffickers to hide their assets, their addresses, their telephone numbers and beeper/pager services by using other person's names in order to avoid detection by law enforcement officials.

a. It is common practice for drug traffickers to often maintain residences which are used as "stash houses" or locations for drug storage and distribution, and use "nominees" to obtain telephone service, utility service, and other services to hide the true identity of the owner or person who will use that service.

b. That drug traffickers often place assets in corporate entities in order to avoid detection of those assets by law enforcement officials.

c. It is common practice, that even though these assets are in nominee names, drug traffickers will continue to utilize these assets by exercising dominion and control over them.

9

d.      It is common practice that drug traffickers possess large amounts of U.S. Currency in order to finance their ongoing illicit drug business.

e.      It is common practice that drug traffickers maintain books, records, receipts, notes, ledgers, airline tickets, money orders, and other documents relating to the transportation and distribution of drugs. Drug traffickers commonly front (provide drugs on consignment) to their clients. The books, records, receipts, notes, ledgers, and other documents are kept where the drug traffickers have ready access to them.

f.      It is common for drug traffickers to provide false information to law enforcement officials regarding their identity and the address of their actual residence.

g.      That persons involved in drug trafficking conceal from law enforcement in their residences, vehicles, and businesses the following items: drugs, large amounts of currency, financial instruments, jewelry, automobile titles, other items of value and/or proceeds of drug transactions, and evidence of financial transactions relating to the acquisition and concealment of large sums of money resulting from drug trafficking activities.

h.      When drug traffickers amass large proceeds from the sale of drugs, they attempt to hide the true source of these profits, otherwise known as laundering the money. To accomplish this, drug traffickers many times utilize banks and/or financial institutions with their attendant services, including but not limited to, cashier's checks, money drafts, and letters of credit. Other entities used to launder drug proceeds include real estate firms and purported legitimate business fronts.

i.      Drug traffickers commonly travel to facilitate their trafficking activities. After purchasing drugs, traffickers commonly transport, or cause to be transported, drugs to areas

in which they will be distributed. Common methods of transportation include, but are not limited to, commercial airlines, and rental/private automobiles.

j.      It is common practice that drug traffickers commonly maintain books and similar documents which reflect names, addresses, and/or telephone numbers of their associates in the drug trafficking organization. This information can often be stored in cellular phones in places such as the contacts list.

k.      Drug traffickers often take, or cause to be taken, photographs of themselves, their associates, their property and their product, and that the photographs are usually maintained at the residences and/or businesses of drug traffickers.  Photographs such as these can commonly be found and stored in cellular phones.

l.      Drug traffickers commonly have in their possession, (that is on their person, at their residence, and/or their business) weapons, including firearms of various types. Firearms are used to protect and secure a drug trafficker's property which may include, but is not limited to, narcotics, jewelry, narcotics paraphernalia, books, records, and U.S. Currency.

m.      Drug traffickers frequently maintain hidden compartments within their residence and vehicles to hide drug trafficking evidence (money, ledgers, drugs, etc.), bury evidence in containers such as shoe boxes, or hide the evidence in safes.

n.      The exact quantities, prices, dates, and methods of delivery of drugs are seldom discussed in detailed terms over the telephone.  These details are usually agreed upon during face-to-face transactions.  For this reason, most telephone conversations regarding drugs are very brief and often in code, understood by the traffickers and designed to mislead or confuse non-participants of the conversations.  Drug traffickers make extensive use of cellular phones and text messaging beepers/pagers to facilitate contacting one another.  When calling a beeper or

11

text messaging, traffickers commonly input the number that should be called and sometimes add additional instructions in the form of additional digits. The structure of a drug distribution organization usually consists of sources of supply, wholesale distributors, retail distributors, and the ultimate consumers.  The wholesale distributors often have more than one source of supply, and likewise the retail distributors often obtain drugs from more than one wholesale distributor. After receiving a quantity of drugs, the source of supply will often move the drugs to a location other than where he/she sells them to the wholesale distributors.  The location of the source of supply's so-called "stash house" is generally a well-guarded secret known only to the source of supply and his closest associates.  Most of the drugs, as well as diluting and packaging materials and weighing equipment, are usually kept at the "stash house." Only those amounts needed for immediate sale are usually kept at the point of sale.

o.      Drug traffickers frequently use rental vehicles for everyday travel and will maintain another vehicle, usually at an out of sight location, to facilitate their drug trafficking business.

p.      Evidence of past communication between drug traffickers can be found in saved or deleted text messages, call logs, and other forms of electronic communication occurring over, stored in, or accessed by the cellular phone.

q.      Affiant has repeatedly encountered a practice wherein drug traffickers distribute a cellular telephone number to their drug customers, often described by traffickers as a "money phone."  The money phone is used primarily to communicate with those customers.  The customers will subsequently call the trafficker on that cellular telephone number to arrange a purchase of drugs as needed.  The trafficker will many times field calls from several customers at once, and then direct all those customers to travel in their car to a designated meeting point.

12

Once all the customers have driven to the designated place, the drug trafficker will appear in his vehicle, quickly conduct hand to hand drug transactions with each customer, and then drive away.

**CONCLUSION**

20.      As noted in this Affidavit, CRAWLEY and WILLIAMS have been encountered on multiple occasions in the last year by law enforcement in which they appear to be involved with trafficking in methamphetamine and other narcotics. During your Affiant's investigation, both CRAWLEY and WILLIAMS were traffic stopped in December 2020, in Miamisburg, Ohio wherein suspected methamphetamine was recovered, and was observed to be packaged for resale. Affiant is aware that, at this time, WILLIAMS is incarcerated in Greene County. CRAWLEY has been observed multiple times at the Target Residence which he reports to reside at. Further, multiple trash surveys have been conducted at the Target Residence with the last being on February 1, 2021. Affiant noted that on each trash survey, suspected drugs and drug paraphernalia were located and recovered. Affiant believes that CRAWLEY is still involved with trafficking methamphetamine as well as other narcotics within the Southern District of Ohio. Affiant believes evidence of drug trafficking will be located at the Target Residence.

*David M Ashley*
_____
David Ashley
Special Agent
Drug Enforcement
Administration

Sworn to via telephone after submission
by reliable electronic means on this 17th day of February, 2021.
Fed. R. Crim. P. 3, 4(d), and 4.1.

Kimberly A. Jolson
United States Magistrate Judge

14

## ATTACHMENT A

Residence: 319 E. Maplewood Ave, Dayton, Ohio. Description: This is a 760 square foot, two bedroom, one bath, single story residence with white siding. The residence has a small porch in the front. Left of the front door are numbers that state "319".



## ATTACHMENT B

## PROPERTY TO BE SEIZED

       The items to be searched for and seized are evidence, contraband, fruits of crime, and other items illegally possessed, as well as property designed for use, intended for use, relating to violations of 21 U.S.C. §§ 846 and 841(a)(1) that have been committed by Roberty CRAWLEY or Brandon WILLIAMS  including, but not limited to:

A.     Log books, records, payment receipts, notes, and/or customer lists, ledgers, and other papers or electronic records relating to the transportation, ordering, purchasing, processing, and distribution of controlled substances.

B.     Papers, tickets, notices, credit card receipts, travel schedules, travel receipts, passports, and/or records, and other items relating to domestic and foreign travel to obtain and distribute narcotics and narcotics proceeds, including, but not limited to airline receipts, vehicle rental receipts, credit card receipts, travel schedules, diaries, hotel receipts, truck logs, travel agency vouchers, notes, records of long distance telephone calls, e-mail and other correspondence.

C.     Address and/or telephone books and papers reflecting names, e-mail and physical addresses and/or telephone numbers of individuals, partnerships, or corporations involved in drug trafficking and money laundering.

D.     Financial records, financial statements, receipts, statements of accounts and related bank records, money, drafts, letters of credit, money orders and cashier's checks receipts, passbooks, bank checks, escrow documents, and other items evidencing the obtaining, secreting, transfer, and/or concealment of assets and the obtaining, secreting, transferring, concealment, and/or expenditure of money.

E.     Electronic equipment such as surveillance video and related equipment, pagers, computers, electronic organizers, facsimile machines, cellular telephones, caller ID, telephone answering machines, police scanners and two-way radios, money counters.

F.     United States currency, precious metals, coins, bullion, jewelry, and financial instruments, including, but not limited to stocks and bonds.

G.     Photographs and/or photographic albums or video tapes and recordings of houses and other real estate, automobiles, and of other assets, persons, and/or controlled substances.

H.     Indicia of occupancy, residency, and/or ownership of the premises and vehicles including, but not limited to utility and telephone bills, canceled envelopes, keys, deeds, tax bills, titles, and vehicle registrations.

I.      Contraband, such as illegal drugs and other materials, paraphernalia and/or equipment and tools used in the drug trade, including heat sealing equipment.

J.      Firearms and ammunition.